UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CONNIE LEE,

    Plaintiff,

v.                                  Case No. 8:11-cv-463-T-TBM

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income payments. The Plaintiff urges that her case be reversed and remanded for further consideration because the ALJ failed to fully and adequately consider all of the Plaintiff's impairments and their effect upon the Plaintiff's ability to perform substantial gainful activity. For the reasons set out herein, the decision is affirmed.

A.

Plaintiff was forty-seven years old at the time of her administrative hearing in December 2009. Plaintiff has a high school education. She stands 5 feet 6 inches tall and weighed 206 pounds at the time of her hearing. Her past work was as a cook and cashier. Plaintiff applied for Supplemental Security Income payments in September 2008, alleging disability as of May 1, 2007, by reason of neck and back pain and lung blockage. The Plaintiff's application was denied originally and on reconsideration.

A de novo hearing was conducted by an Administrative Law Judge (ALJ) on December 2, 2009. Plaintiff, who was represented by counsel at the hearing, testified that she is unable to work because of pain in her back and neck, difficulties breathing, and her inability to hold or lift anything due to carpal tunnel syndrome. She last worked in April 2008 as a cook and cashier at a convenience store. Her chiropractor told her she needed to stop lifting things over ten pounds. That job involved stocking and lifting heavy boxes. By her account, she currently cannot lift a gallon of milk without being in pain. Her back pain resulted from a car accident that occurred in August 2007. She described her back pain as burning and stabbing. She received injections for her pain, but it made her cry because they hurt so bad. She is also on pain medication which makes her very sleepy. She sleeps most of the day. She testified that the pain causes her headaches constantly. The pain travels from her head, down her arms and into her spine, like sticking pins and needles into her.

She also has left carpal tunnel syndrome. She tries not to do too much with the left hand otherwise she will drop things. She is right-hand dominant. She has lost hearing in her left ear, but can hear on the right although sometimes she hears bells ringing in the right ear. As for her breathing problems, Plaintiff cannot be around chemicals, dust, or fumes or she will become dizzy, short of breath, and hyperventilate.

Plaintiff obtained a high school education attending special education classes. She can read some, but her writing is bad. She can do simple math. She has not had any vocational training, but attended anger management classes. She attended six months of basic training in the Army and was honorably discharged. She has a driver's license, but does not drive often because of all the medication she takes. She lives with her three children. Her

current weight is 206 pounds which is up from 189 because she is unable to move around to do any activities or physical exercise.

As for daily activities, she spends most of her day in bed. She watches the gospel or spiritual channel on television or will read the Bible. She naps two to four hours per day. Her children will help her shower and get dressed, and she has a friend that will do her hair for her. She goes to physical therapy two days per week which helps at the time, but by the time she gets home, she is in pain again. She does not do any social activities other than go to church three times per week, and even then she will sit in the back because of her pain and the need to move around. The services last an hour, but she cannot sit the entire time and sometimes will leave early if her headaches are bad. Plaintiff tries to do some household chores, but her children will help because she cannot lift things. She and her children will do the grocery shopping together. She pushes the cart. She does not do any yard work. She used to enjoy dancing, walking, going to the movies, and having a social life.

She describes her pain as a ten on a scale from one to ten with ten being the most painful. She can only walk short distances, less than a city block. If she has to walk up stairs, she gets short of breath. She can stand for about fifteen to twenty minutes before needing to sit and can sit for about twenty to thirty minutes before needing to move around. She can bend but it hurts real bad. She can raise her arms over her head, but it hurts to do so. She testified that she is fatigued all the time and cannot do things with her children she used to be able to do. (R. 43-60).

The ALJ next took testimony from Lionel Evans, a long-time friend of Plaintiff's. He does not live with her, but spends three to four days per week visiting with her at her

3

house. He helps pay her bills and drives her wherever she needs to go. By his account, she can hardly do anything and mostly lays around the house. He testified that when he sees her she is in a lot of pain. (R. 60-62).

The ALJ next called Joyce Ryan, a vocational expert (VE), to testify. In pertinent part, the VE testified on a hypothetical question which assumed a person of Plaintiff's age, education and work history capable of a restrictive range of light work, restricted exertionally by the need to alternate sitting and standing, and restricted environmentally by the need to avoid temperature extremes, and avoid exposure to gases, fumes, toxins, or other pollutants, working in a temperature-controlled environment, and precluding complex and detailed tasks, but permitting simple, routine, repetitive tasks embraced by the unskilled and lower end semi-skilled occupational base. On such hypothetical, the VE opined that the Plaintiff could not return to her medium work activity as a cook, but could perform jobs available in the local and national economy, including cashier, small products assembler, and ticket seller. The VE testified that each of these jobs is classified as light and unskilled.[1] The VE stated that her testimony is consistent with the *Dictionary of Occupational Titles* (DOT).

In response to questioning by Plaintiff's counsel, the VE testified that if the Plaintiff had to lie down frequently due to back pain, this would preclude all competitive work. (R. 62-65).

---

[1] In a second hypothetical posed by the ALJ assuming an individual capable of a restricted range of sedentary work which provides for a maximum of occasional lift of ten pounds, rather than twenty, the VE opined that the same jobs would exist as there is very little lifting of twenty pounds with the jobs identified.

On January 11, 2010, the ALJ determined that while Plaintiff has severe impairments related to abnormalities of the brain (sinus and lesions) with residual headaches, asthma, cardiomegaly, chronic obstructive pulmonary disease (COPD), depression, emphysema, ethmoid sinus disease, hypertension, knee pain variously diagnosed as arthritis of the knee and chondrocalcinosis, neuropathy, mitral and tricuspid regurgitation, and various other musculoskeletal impairments variously diagnosed as disc bulging, disc desiccation, osteoarthritic changes, Schmorl's nodes, and spondylosis, she nonetheless had the residual functional capacity to perform a restricted range[2] of limited light exertional work.[3] Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 23-34). The Appeals Council considered additional evidence and denied Plaintiff's request for review.

B.

Consideration of the Plaintiff's claims is governed by certain principles. In order to be entitled to Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[2]The RFC required limitations for a sit/stand option, with no repetitive bending, no stooping, crawling, balancing, or working near heights and no driving. Additionally, Plaintiff was limited environmentally by the need to avoid extremes, gases, fumes, toxins, pollutants, and extremes in temperatures. Further, Plaintiff was limited to simple routine repetitive tasks.

[3]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the

record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

## C.

Plaintiff initially complains that the ALJ failed to consider the combined effects of all her impairments. More particularly, she complains that the ALJ failed to consider her frequent headaches and right arm neuropathy. She urges that although the ALJ found both headaches and neuropathy to be severe impairments, he failed to address them beyond the second step of the evaluation process and he failed to account for the effects of these impairments in the functional assessment or in the questioning of the VE. Plaintiff urges that Dr. Gu's nerve study is congruent with the Plaintiff's complaints of numbness, pain, tingling, and weakness of the right grip, as well as her testimony as to loss of grip and dropping things with the left upper extremity. And, according to the DOT, the position of cashier requires frequent reaching, handling, and fingering. Similarly, both the positions of assembler of small products and ticket seller require constant reaching, handling, and fingering. By the Plaintiff's argument, there is no indication that any accommodations were made in questioning the VE for the Plaintiff's headaches or diminution of use of the upper extremities, and therefore a remand is warranted for further development. (Doc. 22 at 6-11).

Additionally, citing SSR 00-4p, she argues that the ALJ failed to resolve the inconsistency between the VE's testimony and the *Dictionary of Occupational Titles* (DOT). Although the VE testified that her testimony was consistent with the DOT and the ALJ affirmed that testimony, such conclusion was inherently inconsistent and inaccurate and the jobs identified by the VE were beyond Plaintiff's capacity and inconsistent with the DOT. (Doc. 22 at 12-16).

The Commissioner responds that the alleged failure of the ALJ to consider her impairments in combination is without merit as the record shows the ALJ considered her combined impairments, including her headaches and neuropathy. Citing *Wheeler v. Heckler*, 784 F.2d 1073 (11th Cir. 1986), the Commissioner argues that the ALJ's statement that he considered the claimant's impairments in combination (R. 27) is sufficient to show that the combined effects of her impairments were considered. Moreover, beyond step two of the evaluation process, the ALJ considered her headaches, numbness of the right arm and hand, and loss of grip strength, in addressing her subjective complaints (R. 29) and assessing her residual functional capacity. (R. 30). In light of this recognition by the ALJ, it is clear that the ALJ did consider her headaches and neuropathy beyond step two of the evaluation process. Further, in light of the medical evidence, the hypothetical to the VE adequately incorporated her limitations. As for the claim that such limitations were not included in the hypothetical question to the VE, the Commissioner urges that the Plaintiff mischaracterizes the extent of the limitations from her neuropathy and the ALJ need only include in his hypothetical the functional limitations supported by the record. In any event, the right arm neuropathy was accounted for by the limitation to light work which requires lifting no more

8

than twenty pounds. And as for the Plaintiff's complaints of headaches, the ALJ found little evidence that would preclude her from performing simple, routine, and repetitive tasks. (Doc. 23 at 5-8).

The Commissioner also argues that the ALJ fully complied with SSR 00-4p by questioning the VE about any conflicts between his testimony and the DOT. The VE's response indicating no conflicts also works to resolve the claim that the limitation for simple, repetitive work precludes her from performing cashier, assembly and ticket seller jobs because the DOT indicates those jobs have GED reasoning levels of two or three. And, given that there were no apparent inconsistencies between the DOT and the VE's testimony, there was no obligation on the ALJ to investigate the matter further. *See Hurtado v. Comm'r of Soc. Sec.*, No. 10-12680, 2011 WL 1560654, at *2 (11th Cir. Apr. 25, 2011). As for the alleged inconsistency in the VE's opinion that these jobs could be performed at both the light and sedentary levels, when fairly read, the testimony is not inconsistent. (Doc. 23 at 8-12).

Initially, Plaintiff is correct that the Act and pertinent case law require that the ALJ consider each impairment, as well as the combined effect of all of a claimant's impairments. 42 U.S.C. § 423(d)(2)(B); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). In *Bowen v. Heckler*, 748 F.2d 629 (11th Cir. 1984), the court held that where a claimant has alleged a multitude of impairments, a claim for benefits may lie even though none of the impairments, when considered individually, is disabling. In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled. *Bowen*, 748 F.2d at 635; *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987). However, I cannot agree with her contention

9

that the ALJ here failed to consider Plaintiff's impairments, including her alleged headaches and neuropathy, individually and in combination at each step of the evaluation process. Upon my review, Plaintiff is not entitled to relief on this aspect of her claim.

First, the decision reflects that the ALJ credited Plaintiff with an assortment of severe impairments including headaches and neuropathy at step two of the five-step evaluation process dictated by the Regulations.[4] These findings, among others, were accompanied by the ALJ's review of the supporting medical records which is not challenged by the Plaintiff. *See* (R. 25-27). At step three of the five-step evaluation process, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or equals any listed impairments in 20 CFR Part 404, subpart P, Appendix 1. (R. 27). As urged by the Commissioner, in this Circuit, such a statement by the ALJ that he or she has considered a claimant's impairments in combination is sufficient to show that the combined effects of her impairment have been considered. *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (citing *Wheeler v. Heckler*, 784 F.2d 1073 (11th Cir. 1986)). Beyond that, the decision also reflects that the ALJ assessed the combined effects of her impairments at step four of the evaluation process as well. At that step, the ALJ determines the claimant's residual functional capacity (RFC). As part of the RFC assessment, the ALJ considered Plaintiff's subjective complaints. Here, he expressly noted, among other complaints, Plaintiff's complaint that she suffered carpal tunnel, had headaches, numbness of the right arm and hand, and loss of control of grip strength. (R. 29). While finding some support for the

---

[4] While her complaints of carpal tunnel syndrome were considered also, the ALJ found no definitive diagnosis for the same. (R. 27).

10

subjective complaints, the ALJ concluded they were overstated. Again, Plaintiff does not here challenge this conclusion. As for the RFC assessment, among other comments, the ALJ indicated that Plaintiff's RFC was limited to a range of light work due to factors such as her cardiovascular and musculoskeletal impairments and neuropathy and alleged loss of grip strength. And, further he noted non-exertional limitations were included to accommodate the claimant's depression and headaches. (R. 30).[5] By my consideration of this decision, the Plaintiff is simply incorrect that the ALJ failed to fairly assess her impairments individually and in combination.

As for the complaint that there was no accommodation for the limitations in her upper extremities or for her headaches in the questioning of the VE, this is simply incorrect. While the evidence supported sensory/motor neuropathy in the right ulnar and median nerves with mild sensory neuropathy in the left ulnar and median nerves, there was no evidence of carpal tunnel and by the ALJ's conclusion, the condition did not prevent her from performing light work. As for the headaches, as noted above, the ALJ credited the same and her depression as limiting Plaintiff to simple, repetitive, routine work at the unskilled and low end of semi-skilled level for work. Again, I note that the Plaintiff does not challenge the RFC assessment or demonstrate from the medical evidence that greater limitations were required. Further, it merits the comment that Plaintiff was represented by counsel at the hearing who

---

[5]As for the need for simple work, the ALJ's comments again reflect his consideration of the combined effect of her impairments. As the ALJ stated, "due to a combination of factors the claimant is precluded from complex and detailed job tasks but able to perform simple routine repetitive tasks embraced by the unskilled and lower and semi-skilled occupational base." (R. 29-30).

11

had a fair opportunity to question the VE along these lines and she offered only a single question suggesting an additional limitation for needing to lie down frequently. Thus, by my review, a fair reading of the decision reflects that the ALJ considered Plaintiff's impairments in combination throughout the five-step evaluation process. To the extent that Plaintiff here actually complains that the ALJ overstated her RFC or failed to include all her limitations in questions to the VE, she simply fails to demonstrate this from the medical record.

As for the purported failure of the ALJ to consider the consistency of the VE's testimony with the DOT, Plaintiff again fails to demonstrate reversible error.

Under SSR 00-4p,[6] "[o]ccupational evidence provided by a VE [ ] generally should be consistent with the occupational information supplied by the DOT. Where there is an apparent unresolved conflict between VE [ ] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE [ ] evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A.). Here, the decision reflects that the ALJ inquired of the VE whether her testimony was consistent with the DOT and the VE answered in the affirmative. (R. 65). In his decision, the ALJ expressly found, "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the [DOT]." (R. 33). Despite these findings, Plaintiff insists, without any authoritative vocational support, that the VE's

---

[6] In this circuit, such rulings or policy statements by the Administration are entitled to deference by the court. *See Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994).

testimony and the ALJ's conclusion were in error because the jobs identified by the VE as available to the Plaintiff, that is, cashier and ticket seller, have a GED reasoning level of three and the assembler position had a GED reasoning level of two.[7]

First, I agree with the Commissioner that the VE's expert opinion that her testimony was consistent with the DOT answers this challenge. *See Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999).[8] Here, there is no indication that the VE was not familiar with or otherwise overlooked the GED reasoning level for the jobs she identified as available to Plaintiff. Clearly this was not challenged or even suggested by Plaintiff's counsel at the hearing. Nor does the record indicate any apparent inconsistency which the ALJ was duty-bound to explore. *See Hurtado*, 2011 WL 1560654, at *2 (ALJ did not err in relying on VE's testimony). Again, no such inconsistency was even suggested by counsel at the hearing. Furthermore, I am

---

[7]"GENERAL EDUCATION DEVELOPMENT (GED) . . . embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained from experience in elementary school, high school, or college. However, it may be obtained from experience and self-study. The GED scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." DICTIONARY OF OCCUPATIONAL TITLES, Appendix C, 1991 WL 688702 (4th ed. 1991). A reasoning level of two requires an ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and to] deal with problems involving a few concrete variables in or from standardized situations." A reasoning level of three requires an ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and to] deal with problems involving several concrete variables in or from standardized situations." *Id.*

[8]Although SSR 00-4p was promulgated after the court's decision in *Jones*, the Eleventh Circuit recently reaffirmed its holding that VE testimony trumped any inconsistent provisions of the DOT. *See Hurtado v. Astrue*, No. 10-2680, 2011 WL 1560654, at *2 (11th Cir. Apr. 25, 2011); *Jones v. Comm'r of Soc. Sec.*, No. 10-14454, 2011 WL 1490725, at *2 (11th Cir. Apr. 19, 2011).

13

unwilling to substitute my opinion for that of the VE in these circumstances. Absent even a proffer of authoritative vocational evidence to support this contention, it is improper, if not impossible, for this court to make the vocational decision which Plaintiff essentially asks the court to make.[9] In sum, I decline to find error on these grounds in this instance.[10]

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 21st day of March 2012.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

---

[9]As a factual matter, the ALJ's limitation was more detailed than suggested by the Plaintiff. Thus, the question assumed a limitation "due to a combination of factors, precluding complex and detailed tasks, but permitting simple, routine, repetitive tasks embraced by the unskilled and lower end semi-skilled occupational base." (R. 63). By my consideration, such suggests somewhat greater capacity. Again, this was not explored, challenged or expanded upon by counsel at the hearing.

[10]I find no merit to the claim that the VE's testimony that the available jobs could be performed at both the light and sedentary level is inherently in conflict with the DOT. When the actual testimony is fairly read, there is no inherent inconsistency with the DOT and to the extent there may be, it is explained by the VE. (R. 64-65).